# CHARLESTON

BUCKHANNON & NORTHERN RAILROAD CO. v. GREAT SCOTT COAL & COKE CO. *et al.*

Submitted November 24, 1914. Decided December 22, 1914.

1. EMINENT DOMAIN—*Condemnation Proceedings—Estimation of Damages.*

In condemnation of land for public use the date of the actual tak-

ing is that to which reference should be made by commissioners or jury in assessing damages. (p. 429).

2. SAME—*Condemnation Proceedings—Estimation of Damages—"Date of Actual Taking."*

Under the constitution and laws of this state that date is the date of the actual payment of the damages into court, or to the owner, after confirmation of the report of commissioners or the verdict of the jury. (p. 429).

3. SAME—*Condemnation     Proceedings—Instructions—Estimation     of Damages.*

Instructions 6, 7 and 22 given for defendant do not in terms or by implication tell the jury that in estimating damages to the residue of the land not taken they should include 255 acres of coal, not contiguous to the tract or tracts, parts of which were taken for applicant's right of way, and they are not bad for that reason. (p. 432).

4. SAME—*Condemnation Proceedings—Special Benefits.*

Instructions numbers 7, 8, 12 and 22, given for the defendant, are not in conflict with numbers 8, 11, 12, 14, 26 and 27, given for the railroad company, respecting special or peculiar benefits to the residue of the land not taken. Read together these instructions correctly propounded the law on that question as enunciated in our decisions referred to. (p. 434).

5. SAME—*Condemnation Proceedings—Special Benefits.*

Additional facilities or ways for transportation furnished by a proposed work of internal improvement are general, not special or peculiar benefits chargeable to the owner, and defendant's instruction number 22 given, so telling the jury, is not bad as implying that the owner is not chargeable as a special benefit, with the right to special shipping privileges given by section 66b II, chapter 54, Code 1906, a question not presented and which we do not decide. (p. 434).

6. SAME—*Condemnation Proceedings—Damages Recoverable—Instructions.*

Damages resulting to the residue of the land not taken, from trespass thereon, or from the negligent or unskillful manner of doing a proposed work of internal improvement on the part taken, as the building of a railroad, or the like, are not recoverable in condemnation, but constitute the basis of a separate and independent action; but all such damages to the residue as might have been reasonably anticipated from doing such work carefully and skillfully, and as proposed by the applicant, are the proper subject for consideration by commissioners or jury in a condemnation proceeding. Defendant's instruction number 14, and court's instruction number 2, complained of, do not contravene this rule, nor is the former bad in the light of the evidence, for uncertainty as to the

supposed rights and property assumed to have been invaded by the railroad company.   (p. 438).

7.  APPEAL AND ERROR—*Eminent Domain—Condemnation Proceedings—* *"General Benefits"—Harmless Error—Instructions.*

Court's instruction number 1, telling the jury that the burden was on the coal company to prove damages to the land taken and damages to the residue, but that as to peculiar and general benefits the burden was upon the railroad company, did not constitute prejudicial error.   General benefits are such as are included in the actual value of the land immediately before the taking, due to the prospect of the proposed improvement, and are chargeable to the condemnor in no other way.   This instruction telling the jury that the burden was upon the coal company to show damages, practically covered the question.   The burden of proving special or peculiar benefits was properly put upon the applicant.   (p. 441).

8.  EVIDENCE—*Condemnation Proceedings—Expert Evidence—Damages.*

While the true test of damages to the residue of the land not taken is the difference in value immediately before and immediately after taking, so interpreted as not to charge the owner with general bene-fits, it is not error in such cases to propound to a witness the usual question, what will be a just compensation to the owner for dam-ages to the residue of the land beyond the peculiar benefits which will be derived by him in respect to such residue from the proposed work?   The value of and force of the evidence elicited by such questions may be fully tested on cross-examination.   (p. 442).

9.  APPEAL AND ERROR—*Harmless Error—Exclusion of Question.*

In light of the other evidence and the instructions to the jury on the subject, the following question to a witness did not constitute reversible error for ignoring the terms of applicant's proposal and the agreed order:   "Please tell the jury what effect upon the value of that real estate of the Great Scott Coal & Coke Company the building of this railroad of the Buckhannon & Northern Railroad had?"   (p. 443).

10.  EVIDENCE—*Competency of Expert—Expression of Opinion—Value—* *Damages.*

Without qualifying in some degree to do so a witness should not be permitted to give his opinion as to value or damages in a pro-ceeding to take or damage land for public purposes.   (p. 444).

11.  APPEAL AND ERROR—*Harmless Error—Admission of Evidence—* *Damages.*

It is reversible error in such a proceeding to permit a witness to compare the value of city property with the value of land taken in the country, or vice versa.   Such comparisons constitute no just basis for ascertaining damages.   (p. 444).

12. SAME—*Eminent Domain—Admission of Evidence—Condemnation Proceedings—Damages.*

Nor is evidence of prices paid others by the condemnor for land and damages to the residue, though located in the same vicinity, proper evidence to go to the jury on the question of damages, and its admission over objection is reversible error. (p. 445).

13. EMINENT DOMAIN—*Condemnation Proceedings—Evidence—Damages.*

It was error to have permitted the witness Hoffman to testify, as an element of damages, that but one of the crossings, and that not a good one, called for by said agreed order, had been provided by the railroad company, but this error was substantially cured by subsequent questions propounded to this witness. (p. 445).

14. SAME—*Condemnation Proceedings—Value—Evidence—Loss of Profit —Element of Damages.*

While it is competent in such cases to show how the property is used, as an element of value, it is incompetent to show loss of profits to the business carried on upon the property. So incidental losses or inconvenience resulting from the proper and skillful doing of the work are not proper elements of damages to be considered by commissioners or jury. (p. 446).

15. SAME—*Condemnation Proceedings—Element of Damages—Competition.*

Nor is the fact that the building of a railroad will open up competition along its line, in the production and sale of coal, a proper element of damages to be so considered in such cases. (p. 447).

16. SAME—*Condemnation Proceedings—Evidence of Value.*

Evidence offered in this case that the residue of the land, excluding general benefits, was worth $100.00 per acre more after than before the building of the railroad, was properly rejected. The question before the jury was not the difference in value of the residue after the railroad had been built, but what was the difference in value immediately before and immediately after the taking of the part taken by the railroad company. (p. 447).

17. TRIAL—*Comment on Evidence—Province of Jury.*

It is error for the judge on the trial in ruling on the admissibility of evidence, in the presence of the jury, to express his opinion as to the weight or effect of such evidence. To do so is to invade the province of the jury, and constitutes reversible error. (p. 447).

18. EMINENT DOMAIN—*Condemnation Proceedings—Money Paid Into Court—Disposition—Repayment.*

It is not error for the court after payment into court of the damages assessed by commissioners, and before final judgment, to direct such money paid over to the owner of the land or the persons entitled thereto. If in the subsequent proceedings the damages

found and adjudged against the condemnor, should be less than the amount so paid into court, section 21, chapter 42, serial section 1720, Code 1913, provides, ''the excess shall be paid back to the applicant out of the fund in court, or by the persons to whom the same shall have been paid.'' (p. 449).

Error to Circuit Court, Monongalia County.

Action by the Buckhannon & Northern Railroad Company against the Great Scott Coal & Coke Company and others. Judgment for defendants, and plaintiff brings error.

·*Reversed and Remanded.*

*Cox & Baker,* for plaintiff in error.

*Lazzelle & Stewart, C. B. Dille,* and *L. V. Keck,* for defendants in error.

MILLER, PRESIDENT:

In condemnation the petitioning railroad company proposed to take, and, by an agreed order, pronounced on January 6, 1911, was adjudged the right to take, for a right of way, four several strips of land through lots or tracts owned by defendant and occupied together with other lands, with houses, coal tipple, tramway, overhead or aerial way, incline, wharf, and other structures, situated on the Monongahela river, in Monongalia County, all constituting one complete coal plant or operation for mining and marketing coal, such taking to be ''subject to the exceptions, restrictions, reservations, terms and conditions'' proposed in its said petition and as adjudged in said order of January 6, 1911.

The exceptions, reservations, etc., referred to relate to certain changes in coal tipple, incline, tramway, and other works of the defendant company, which the condemning railroad company proposed, and became bound to make, for the necessary convenience and safety to all parties in operating over the same land petitioner's railroad and defendant's coal mines and operating plant. These changes were to be made at a time when as little injury as possible would result to defendant's operations; and the right was reserved to defendant to continue to occupy the land covered by said

right of way with its coal tipple, etc., and to make repairs thereon; and there was excepted and reserved to defendant all the coal, oil and gas in and under the lands proposed to be taken with mining rights as prescribed; and provision was made for four railroad crossings at different points on said right of way; also sewerage rights, and ways for water, steam and gas lines, necessary in operating defendant's coal mine were reserved; and the construction and maintenance by the petitioner at its own expense of a thirty six inch drain was provided for, and of which defendant was to have the privilege of using, but so as not to interfere with the uses thereof by petitioner, etc. And said order also gives petitioner the right to make a certain embankment or fill thirteen feet beyond the eastern line of the third parcel of land, and the defendant was given the right to erect a retaining wall between said eastern line of said parcel and the river, according to certain specifications; and the right was also given the railroad company to make a fill beginning at the northern end of said fourth parcel of land extending a distance of one hundred and sixty six feet along said eastern line; also an additional fill or embankment along said line on said fourth tract next to said river the additional distance of twenty two hundred and eighty five feet so as to maintain its railroad bed and sustain said embankment; and the right was also given defendant to erect and maintain a retaining wall in connection with said third parcel of land.

And defendant by said order also consenting that petitioner might take said lands as proposed, commissioners were thereby appointed to ascertain what would be a just compensation to defendant for the land so proposed to be taken, for its said railroad as set forth in said petition, subject to the reservations, restrictions, terms and conditions, as well as damages to the residue of the tracts beyond the peculiar benefits to be derived in respect to such residue from the work to be constructed, and the purposes to which said land to be taken was to be appropriated.

The commissioners so appointed on January 6, 1911, made their report, on January 11, 1911, that $4,550.00 would be such just compensation. Thereupon exceptions to said report

were filed by defendant, and a jury demanded to try the issue.

In the mean time petitioner, on February 6, 1911, paid the amount awarded by said commissioners with interest thereon into court, and thereafter entered on the land, and at the time of the trial of the issue before the jury, beginning on April 28, 1913, had practically completed its road over said lands, and as completed was viewed by the jury. On May 14, 1913, the jury returned a verdict in favor of defendant for $12,500.00, which the court below, on motion of petitioner, refused to set aside. On May 22, 1913, the court ordered the money paid into court paid over to defendant, and on May 27, 1913, gave judgment against petitioner for $7,950.00, being the excess of the verdict of the jury over that amount, and these are the judgments now complained of.

Points of error relied on: First, it is affirmed that instructions 2 and 16, of the coal company, together with certain questions propounded witnesses for it, fixing February 6, 1911, the date petitioner paid into court the damages awarded by the commissioners, and elected to take the land, as the date to which the jury should have reference for ascertaining the damages found by it, are erroneous and prejudicial, calling for reversal; that the proper date was the date of the adjudication of petitioner's right to take, all further proceedings thereafter simply involving the amount of the damages.

It is conceded, however, amidst some conflict of decisions, some depending on peculiar statutes, that the proper date is the date of the actual taking of the land. *Richmond &c. R. Co.* v. *Humphreys,* 90 Va. 425; *Railroad Co.* v. *Tyree,* 7 W. Va. 693; *Guyandot Valley R. Co.* v. *Buskirk,* 57 W. Va. 417; 15 Cyc. 719; 2 Lewis on Em. Dom., (3rd ed.) section 705. Our own cases cited are in full accord with this general rule.

The question we have, therefore, is when under our constitution and statutes can land be said to be taken? A proper answer will dispose of the first point of error. It seems clear to us that the date of the application or proceeding to take cannot be regarded as the date of the taking; nor can the date adjudicating the right to take be treated as that date. Sections 5 and 6, chapter 42, serial sections 1704 and 1705,

Code 1913, relating to the application and notice, speak of the real estate *proposed to be taken.* So the date of the proposal to take cannot be the date intended. Section 9, of the same chapter, serial section 1708, relating to the acceptance by the owner of the amount of damage proposed by applicant, in his application, for the land ''proposed to be taken,'' says, ''the court shall make an order. that, on such payment being made, the interest of the said owner shall be thereby transferred to the applicant, and a copy of such order, with the receipt of the said owner for the money written thereon, or annexed thereto, shall operate as a conveyance, with special warranty,'' &c. Section 10, serial section 1709, says: ''But, except in the case specified in the preceding section, upon its appearing that proper notice has been given, and that the case is one in which the applicant has lawful right to take private property for the purposes stated in the application, upon just compensation, five disinterested freeholders shall be appointed commissioners to ascertain what will be a just compensation  *  *  *  *  for each parcel of real estate *proposed to be taken.*'' The order provided for in this section is the only order of adjudication mentioned in the statute.

But this adjudication of the right to take cannot be the taking of the land. Section 18, serial section 1717, of said chapter, provides that: ''At any time within three months after the report, (report of the commissioners) or the verdict of a jury, if there be one, (as there may be on the exception and demand of either party) has been confirmed and ordered to be recorded, or where such report or verdict has already been confirmed, at any time within three months after this chapter takes effect, the sum so ascertained with legal interest thereon from the date of the report or verdict until payment, may be made by the applicant to the persons entitled thereto or into court''; and that ''upon such payment the title to that part of the land so paid for, shall be absolutely vested in fee simple in the applicant,'' &c.

But section 20, serial section 1719, of said chapter, it seems to us, sheds special light on the question of the time of taking. It provides: ''After such report has once been made, whether it be set aside, recommitted, or new commissioners appointed

or not, or whether a trial by jury be demanded and had or not, the applicant upon paying into the court the sum ascertained by such report, with legal interest thereon from the date of the report until payment, may, notwithstanding the pendency of further proceedings, *enter* upon, *take* and *use* for the purposes specified in the application, that part of the land in respect to which such payment is made and where such payment has been made and possession taken, or where payment has been made without taking such possession in a pending case, it shall have the same effect as if such payment were made or possession taken, or both, in a case hereafter commenced; and no order shall be made or any injunction awarded by court or judge to stay him in so doing, unless it be manifest that applicant is insolvent or that he or his officers, agents or servants, are transcending their authority or that such interposition is necessary to prevent injury which can not be adequately compensated in damages.''

Now it seems apparent to us from these provisions of the statute, that the date of the actual taking of the land is the date when, after the report of the commissioners, provided by said section 20, or after verdict, if a jury is demanded, the money is actually paid to the owner, or into court. Until then the applicant is not permitted to put a foot on the ground.

Moreover, section 9, Art. 3, of our Constitution, and section 1, of said chapter 42, in conformity therewith, says: ''Private property shall not be taken or damaged for public use, without just compensation; nor shall the same *be taken* by any company, incorporated for the purposes of internal improvement, *until just compensation shall have been paid*, or secured to be paid, to the owner.'' As these provisions require that the compensation to the owner shall be first ascertained as provided by law, that is by report of viewers, or the verdict of the jury, clearly the time of *taking* is here referred to the date when compensation is paid or secured to be paid, and that can only be either on the report of the commissioners, or after the verdict of the jury has been rendered. Until then the land can not be *taken;* until then compensation can not be made or secured to be paid as re-

quired by the constitution and laws controlling the taking of the land by applicant.

As a rule for ascertaining damages our decisions say that the proper measure of the damage is the difference between the value of the land immediately before and immediately after taking, and the damages to the residue, less peculiar or special benefits, but not general benefits accruing to the public at large by the proposed work, clearly implying an instantaneous taking, and an ascertainment of the damages before the taking. This rule apparently is in accord with the rule in all other jurisdictions.

Where, as in this case, the applicant elects, on the report of the commissioners, and pending further proceedings on the demand of either party for a trial of the issue by a jury, to pay the award of the commissioners, the date of the taking clearly is the date of payment and entry on the land, which of course is before any work is done thereon. If the applicant elects to wait until after the jury has rendered its verdict, before payment and entry, the date of the taking would clearly be referred to a date after the verdict and judgment, when the amount of damages is paid, either to the owner or into court, and possession taken. In either case then the date of the taking within the contemplation of the law is the date after the damages have been ascertained when the amount of such damages shall have been actually paid and entry made on the land.

It is suggested in argument that this view may be opposed to *Guyandot Valley R. Co.* v. *Buskirk, supra,* and *C. & O. Ry. Co.* v. *Deepwater Ry. Co.,* 57 W. Va. 697. We do not think there is any such conflict. We, therefore, negative the first point of error.

The second point is that coal company's instructions numbered 6, 7, and 22, and the statement of the court relating to the damages, in effect told the jury to deduct special benefits from damages to all the residue of the lands owned by the coal company, regardless of the fact that 255 acres of the 440 acres, shown by the evidence to be owned by the coal company, are not contiguous to the tract from which the four parcels were taken, and it is complained in the same connection, that besides these instructions and the statement of

the court, defendant was permitted to prove damages to all the land owned by it.

Certainly the instructions themselves are not amenable to the criticism. They do refer to the residue of the land of the defendant not taken, but nowhere is reference made to a tract of 255 acres not part of the residue taken, and nowhere in the evidence of the witnesses, so far as we can see, is any reference made or attempt to prove damage or benefits to the 255 acres, coal, not surface, owned by the defendant company, except on cross-examination of defendant's witness Tait, where the fact was brought out that in addition to the land owned by the defendant and contiguous to the land taken, the coal company owned 255 acres of coal. Apparently the object of counsel in going into this subject was to show to the court and jury greater benefits to the coal company's lands and to reduce the damages to the same. However, the error, if any, was introduced into the record by applicant's counsel, and if they had thought there was danger of the jury considering damages to the 255 acres of coal they should have avoided it by instruction to the jury.

The statement of the court, to which exception was taken, was not made in connection with the evidence of this witness Tait, but in course of cross-examination of applicant's witness Wade, and with reference to lot number 3, a part of which was taken. The question was: "Now, Mr. Wade, if you do not know the value of the front of this lot No. 3 how can you fix the damages to the residue or the value of the part taken?" Lot number 3 was a small lot, formerly two or more lots, owned by different people, as the witness said. The witness was advised by the court in this connection that the question at issue was, the damages to the residue of the whole of the land owned by the coal company, and not as to damages to a small lot originally owned by any party, a part of which was to be taken. We do not think that the court meant to include the 255 acres of coal, not a part of or contiguous to any part of the land taken. Lot number 3 was a part of the plant of the coal company, and we cannot conceive that the jury were in any way misled by the remarks of the court. Moreover, the evidence tends to show that the 255 acres of coal constitute a part of defendant's mining plant,

and so located with reference to the other contiguous tracts as to be workable with them; if so, injury to or destruction of the one would damage and affect the other, and such damages would be the proper subject of consideration by the jury in a condemnation proceeding. See 2 Lewis on Em. Dom., (3rd ed.) sections 697-700, inclusive. So we overrule this point also.

The third point is, that instructions numbered 7, 8, 12 and 22 for the coal company, respecting special or peculiar benefits, are erroneous, and in conflict with instructions numbered 8, 11, 12, 14, 26 and 27, given for the railroad company. We have examined these instructions carefully and we do not find irreconcilable conflict. Counsel affirm certain propositions, which they conceive are supported by the great weight of authority, and which they believe when applied show error in the instructions of the coal company complained of, namely, (1) that benefits are such as enhance the value of the residue. If they do not enhance the value they are not benefits within the meaning of the law; (2) that enhancement in value resulting from benefits to the residue from a public improvement, not derived in common by the land in the community at large, is a special benefit; (3) that the right to compel a switch or side track, connecting a railroad for transportation, is a special benefit, if it enhances the value of the residue; (4) that proximity to a railroad furnishing additional means of transportation, not enjoyed in common by the community at large, which enhances the value of the residue, is a special benefit. We see nothing wrong in the first two of these propositions; but the special benefits comprehended in the second proposition must not only be such as are not shared in common with the public in general, but such as affect in a particular and peculiar way, within the meaning of our decisions, the residue of the property not taken.

The third proposition presents a more serious question. Personally speaking, I have a doubt about it; some of my associates have none. But we have concluded the question is not presented for decision.

We are a unit in denying the literal correctness of the fourth proposition. Our decisions will not support it, unless

it be limited to some such considerations as are covered by the third proposition. As applicable to the case in hand it certainly cannot be affirmed, that the coal company is benefited, except perhaps in degree, because of its immediate proximity to the railroad, beyond the community at large, and by the increased facilities for transportation. The public in general have equal facilities with the coal company in the additional means of transportation provided. The law gives the coal company no special privileges over any other shipper in the community by the additional means of transportation, unless it be covered by section 66b II, serial section 2364, Code 1906. We gave construction to this section of our statute in *State* v. *White Oak Railway Co.*, 65 W. Va. 15, point 4 of the syllabus. But as stated on the previous point the question is not presented for decision. It is manifest from the brief and argument of counsel for the railway company that they rely mainly, if not entirely, on this provision of the statute, as evidence of special benefits, for outside of the increased facilities for transportation, unless perhaps it may be the thirty six inch drain way under the line of applicant's railroad, to be built by the railroad company, and the use of which is by the agreed order given to the coal company, there is no evidence of any special or peculiar benefits. Such drainage, if not previously enjoyed by the coal company, and if beneficial, and affecting the value of the residue of the property, would perhaps be a special benefit, directly affecting the residue of the land, and the proper subject for jury consideration in estimating damages to the residue. But there is no evidence showing, or tending to show any special benefits to the coal company from this drain, not previously enjoyed, or adding value to the land not taken.

Coal company's instruction number 22, is the one mainly assailed. It told the jury that: "That the increased value, if any, of the remainder of the real estate, including the coal on or underlying the remainder of the real estate, not taken, belonging to The Great Scott Coal & Coke Company caused by the construction and operation of the railroad of the Buckhannon & Northern Railroad Company and that the railroad may or will furnish another way for putting said coal into

market,   *   *   *   *   constitute general and not peculiar benefits, and such general benefits can not be offset against the damages'', etc. As already stated, increased value from an additional way and additional facilities furnished for transportation, by the building of the railroad, is a general, not a special benefit chargeable to defendant. Manifestly the criticism of counsel of this instruction involves mainly the right given the coal company by said section 66b II, chapter 54, of the Code, as construed by us in *State* v. *White Oak Railway Co., supra.* It is contended, with respect to railroad company's instructions 8, 11 and 12, said to be in conflict with those of the coal company's complained of, that the former are based on *Blair* v. *City of Charleston,* 43 W. Va. 62, which is the settled law of this state. We reply that while that case may be settled law, it must be as interpreted by the subsequent decisions of *Morrison* v. *Traction Co.,* 60 W. Va. 441, 446, *Harman* v. *Bluefield,* 70 W. Va. 129, 135, *Rutherford* v. *City of Williamson, Id.* 402, 403, *Guyandot Valley R. Co.* v. *Buskirk, supra.* In *Morrison* v. *Traction Co., supra,* Judge Sanders says: ''There are expressions to be found in some cases decided by this Court, notably *Stewart* v. *Railroad Co.,* 38 W. Va. 438, and *Blair* v. *City of Charleston,* 43 W. Va. 62, which indicate that if the market value of the land is as much immediately after the injury complained of as it was immediately before, there is no damage, and the owner is not entitled to recover. If by these expressions it is intended to announce a rule of law by which the land owner will be charged with general benefits, they are incorrect. In *Stewart* v. *Railroad Co., supra,* it is said that just compensation is that which makes the owner whole, and, in respect to general benefits or damages resulting from the construction of the road, leaves him in as good a situation as his neighbor, no part of whose land has been taken. In *Blair* v. *City of Charleston, supra,* it is true that in the third point of the syllabus it is laid down that the measure of damages is such sum as will make the owner whole—that is, if the market value of the property is as much immediately after the injury complained of as it was before, no damages can be recovered, but in the fourth point of the syllabus it is said that in estimating the damages it is proper to abate all peculiar

benefits to the property enhancing its value, but not the general benefits derived by the property owner in common with the community at large. Therefore, when the two points of the syllabus are read together, and in the light of the opinion, we conclude that it was not intended to exclude general benefits.''

For a clear statement of the rule respecting special benefits our cases would seem to go back to *James River, &c. Co.* v. *Turner*, 9 Leigh 313, holding that these ''are such advantages as particularly and exclusively affect the particular tract or parcel of land whereof a portion is condemned—not advantages of a general character, which may be derived to the owner in common with the country at large from the improvement.'' *Guyandot Valley R. Co.* v. *Buskirk, supra.*

After referring to our decisions and other cases, Judge POFFENBARGER says: ''It must be perfectly manifest that, in every case of a projected railroad, there is an appreciation in values of real estate all along the proposed line before any condemnation proceedings are instituted, and, since the market value at, or near, the date of the institution of such proceeding, is the measure of compensation, the enhancement due to the prospect of the construction of the railroad must have entered into the market value of the land, and the land owner obtains it because he takes the market value at that time, not at a date prior to the announcement of the intent to construct the road.''

But the question recurs, does the instruction tell the jury that the benefits given by the statute constitute general and not special benefits to be considered by them? It certainly does not do so in terms, and we do not think that it reasonably implies any such construction of the statute, and the question being not thus squarely presented to the jury by the instruction given, we do not feel called upon to respond to the proposition. Counsel had opportunity to present this question squarely to the jury by instructions, but failed to do so. True, coal company's instruction number 20 did tell the jury that a railroad company is not compelled by law to construct along its line or tracks sidings for the transportation of coal of shippers, but that the shipper himself must do this at his own expense, and then the railroad company is compelled

to receive and transport all coal offered for transportation, and to make reasonable provision for receiving and transporting the same over its railroad, by placing and constructing switches, connecting said siding with its tracks or lines, or other reasonable provisions. But this instruction did not tell the jury that such benefits were not special benefits to be considered by them in reduction of damages. The first part of the instruction may be too broad, but the latter part substantially quotes the statute, and the railroad company had the benefit of the statute to that extent.

Moreover, by railroad company's instruction number 19, the jury were also told that the applicant when its lines should be completed and in operation would be a common carrier, "and that if the industries of mining coal or manufacturing coke is carried on along its line of railroad, the law requires that it shall, without discrimination' between or amongst shippers, and without unnecessary delay, make a reasonable provision for the transportation of all such coal and coke offered for transportation over its railroad," etc. But in no instruction by either party was the court required to tell the jury that this right given by statute constituted a special benefit to be considered in estimating damages. Whether the jury, influenced by this instruction, took into consideration any such supposed special benefit we are unable to determine from the record. The authorities on this question are collated in 2 Lewis on Em. Dom. (3rd ed.) sections 702, 703, and we need not further consider the subject.

The fourth point relates to coal company's instruction number 14. This instruction is as follows: "The Jury is instructed that it has the right to take into consideration, under the evidence introduced in this proceeding, that the defendant Coal Company had certain rights to the river frontage of its property, of which it could not be legally deprived without just compensation, whether the river shipments paid or did not pay it, or were or not profitable, or whether it shipped by river, at all; and that if the plaintiff railroad company, in any way, by the construction of its road through and over the land of the said Coal Company, contracted, hampered, endangered or injuriously affected said rights to the river front of its property, so enjoyed by the

said Coal Company, immediately prior to the 6th day of February, 1911, then the result of the said construction of the said railroad company's railroad become proper matters to be considered by the Jury, in arriving at the damages to residue, if any, over and above peculiar benefits, if any accrued to said Coal Company, by the taking of the land taken and by the construction of said railroad, assuming said railroad company to have fully done and performed all the things it agreed and was required to perform and do under the agreed order of January 6'' 1911.

It is complained that the rights to the river front assumed by this instruction to have been invaded, and that were enjoyed immediately prior to the 6th day of February, 1911, are not definitely defined, so as to properly advise the jury, and besides, the injury, if any, done to these rights was outside of the right of way, and not covered by the applicant's petition and plat filed in condemnation; and that the damage, if any, done to those rights in the subsequent construction of the road by trespass or the negligent manner of doing the work, if any, are not damages which could be considered in condemnation, were not damages which could be said to have been contemplated by the work to be done, and taken into consideration by the commissioners who viewed the land, and if any damage was done to those rights it constitutes the basis of a separate and independent action, and was not the subject of consideration in the trial before the jury in condemnation.

It is no doubt true that damages resulting to the residue of the property not taken, not contemplated or within the scope of the proposed work, but resulting from trespass or the negligent doing of the work, would not naturally be taken into consideration by commissioners or viewers sent upon the land to estimate damages, nor would such damages be the proper subject of consideration by the jury on the trial of the issue in condemnation.

As a general rule damages in condemnation are to be assessed on the basis that the work of construction will or has been done in a skillful and proper manner, not negligently done. _Watts_ v. _Norfolk & W. R. Co._, 39 W. Va. 196; _Jones_ v. _C. & I. R. R. Co._, 68 Ill. 380. In 2 Lewis on Em. Dom. (3rd

ed.) section 715, it is said: "In a proceeding to ascertain the damages for property taken, nothing can be allowed on account of trespasses committed by the condemnor or its agents outside the property sought to be taken, as by removing soil, injuring crops, casting debris upon the land, throwing down fences and cutting trees, or otherwise." But it does not appear in this case that the injuries referred to in the instruction were the result of trespass or negligence of the railroad company in the construction of its railroad. No negligence, so far as we can see, is shown by the evidence. The terms of the proposal covered by the agreed order permitted the making of fills, the building of retaining walls, changes in grade of tramway, etc., and we think it may reasonably have been contemplated that in the construction of the railroad as proposed, and in making the fills and building the retaining wall, damages might result to the wharf and landing and ice breakers, as shown in the evidence; if so, then all these consequential damages resulting from a proper construction of the railroad and the careful doing of the work, would constitute the proper subject of damages to be considered by the jury on the trial of the issue in condemnation. If the work of building the railroad as proposed was properly and skillfully done, with the result as shown in the evidence and covered by the instruction, those damages were proper to be considered by the jury. The instruction plainly referred to those rights, and damages thereto. They were the subject of investigation before the jury, as clearly shown by the evidence. At the time of the trial the railroad had been built and the damages done, and the jury sent upon the premises were permitted to see and observe the result. It seems to us clear that if those damages could have been reasonably anticipated in the beginning as the result of doing the work skillfully and properly, and being done at the time of the trial, the jury had the right to consider them in estimating damages to the residue of the land. So we overrule the point.

The next point we will note relates to instruction number 2, given by the court on its own motion. This instruction was as follows: "The Court instructs the Jury that if they believe from the evidence that the Railroad Company did make the fill and embankment, permitted by the agreed order, upon

the land of the Coal Company east of the land taken by the Railroad Company in this proceeding and by making said fill and embankment caused the icebreaker or breakers to slip or slide or lean away from the shore of the river and towards the middle of the river, and caused the piling driven by the Railroad Company for the purpose of preventing such fill or embankment from slipping or crowding upon the harbor or shore line of the river, and thereby caused the piling to be pushed over toward the harbor in a leaning position, and caused damage to the Coal Company by diminishing the width, depth, size or safety of the harbor, then the Jury should assess such damages therefor, if any were caused thereby, as the preponderance of the evidence including their view will justify.''

It is complained of this instruction that the agreed order authorized the fills and embankment referred to, and that having been consented to by the coal company the resultant injury is *damnum absque injuria;* and besides that the damages, if any, if recoverable, were not recoverable in a condemnation proceeding. We do not so interpret the agreed order. While the order was an agreed order, it provided for the taking of the property and the doing of the things which the order provides, but the coal company did not thereby release damages, resulting from doing the work skillfully or unskillfully and negligently. By the same order the question of damages was referred to commissioners. The coal company waived nothing on the question of resultant damages, and not being satisfied with the award of the commissioners it demanded a jury, and its right to a jury trial has not been questioned, and under the terms of the order we do not think it could be. We think the damages comprehended in the instruction, under the evidence, must be regarded as having been those resulting to the residue of the land taken from the work performed skillfully and properly and that there is no error in the instruction. What we have already said upon the last preceding point is applicable here, and we overrule the point.

Next, court's instruction number 1, is complained of. By it the court told the jury, in effect, that the burden of proof of damages to the land taken, and damages to the residue,

was upon the coal company, but that as to peculiar and general benefits, if any, the burden of proof was upon the railroad company. If there is any error in this instruction it is favorable to the railroad company. General benefits are not chargeable to the owner. They can only be taken into consideration by the jury in estimating the value of the land immediately before and immediately after the taking. The owner is entitled to the value of the land taken at the time of taking, and to damages to the residue, deducting special but not general benefits. In neither case has the owner the burden of showing general benefits. The burden upon him is to prove the value of the land taken and the damages to the residue. The burden is upon the railway company to prove special benefits, if any. 5 Ency. of Evidence, 192; 2 Lewis on Em. Dom., (3rd ed.) section 645.

Other errors complained of relate to the evidence. We have disposed of the first two points made, the first relating to the time with reference to which damages should be ascertained, and the other to the inclusion of the 255 acres of coal in the residue of the tract.

The third point urged is, with reference to the evidence of some of the witnesses. It is said that the questions propounded to witnesses for the coal company elicited from them opinion evidence of damages, unmeasured by the rule laid down in *Kay* v. *Glade Creek R. R. Co.*, 47 W. Va. 479, followed in *Gas Transportation Co.* v. *Wilson*, 70 W. Va. 162. In the Kay Case the court said: A witness, "may not express his mere naked opinion of the amount of damages caused by the work, but must state his opinion of the value of the land before and after the construction of the railroad, in connection with the facts and circumstances relative to the land flowing from the construction of the railroad." But by Gas Transportation Case, this rule must be interpreted according to *Morrison* v. *Traction Co., supra,* and *Guyandot Valley R. Co.* v. *Buskirk, supra,* holding, that the rule must not be so interpreted as to charge the land owner with benefits common to the public in general, but with special or peculiar benefits only, accruing to him by the proposed work. The form of the questions propounded to all the witnesses for the coal company was: "What will be a just compensation

to the Great Scott Coal & Coke Company for damages to the residue of the real estate owned by it on the 6th day of February, 1911, beyond the peculiar benefits which will be derived by it in respect to such residue from the work constructed or to be constructed, or from the purposes to which the part taken was taken by the railway company on February 6, 1911.'' The true test undoubtedly is the difference in the value of the land immediately before and immediately after the taking, care being taken that the land owner is not charged with general benefits, as laid down in the Gas Transportation Company Case. The questions complained of do not call for the bare opinion of the witnesses as to the damages, but for their opinion thereof including general benefits, but excluding special benefits. The form of these questions is the form usually propounded witnesses in such cases, and we do not think they violate the rule of the cases referred to. The value and force of the evidence of these witnesses on these questions might have been tested on cross-examination, by questions framed in accordance with the rule of the cases referred to. We do not see that counsel available themselves of this privilege; but in the examination of their own witnesses they attempted to apply the proper test of damage presented by our decisions. In relation to this matter, more hereafter. We do not see prejudicial error in the form of these questions, or in the answers of coal company's witnesses thereto.

Another point made against the evidence of the coal company's witnesses, is the general one, that many of the questions and answers omitted consideration of the reservations, restrictions and limitations of the order of January 6, 1911. We refer to one example, in the evidence of the witness Deets. The question propounded was: ''Please tell the jury what effect upon the value of that real estate of the Great Scott Coal & Coke Company the building of this railroad of the Buckhannon & Northern Railroad had?'' Some of the questions propounded to witnesses we find did have reference to the agreed order. On the whole record we do not think the jury could have been misled by the questions such as the one alluded to. Moreover, with respect to this point and the preceding point of error, the jury were fully advised by instructions given on behalf of the railroad company, and they

were thereby clearly enlightened on the rule for measuring damages, as well as upon the terms of the agreed order. So we see no substantial merit in this point.

The next point, relating to driving of piling, is substantially covered by what has already been said in reference to resultant damages. If the driving of the piling was a work of necessity and due to consequential injuries from a proper and skillful doing of the work on the railroad right of way, we think such damages were the proper subject of inquiry by the jury, otherwise not.

The next point is that the witness Deets, without qualifying to speak on the subject, was permitted to give his opinion of value, compensation and damages. Of course a witness should qualify on these questions before being permitted to answer. We do not see from the record, however, that the railroad company was prejudiced in the admission of his testimony. The value of it was easily discernible by the jury. Besides, this witness did qualify to a certain extent. He was disposed to be careful in his testimony. He owned land in the vicinity of this land in question, and was to some extent qualified to speak as to value.

The next point relates to the evidence of W. E. Price, for the coal company. He was permitted, over objection, to make comparisons between the value of lots owned by him in the city of Morgantown and those owned by the coal company in the vicinity of Jimtown, and in addition, the court propounded, and permitted him to answer, the following question: "In comparing the value of the lot that you bought in Morgantown and the value of the lots owned by the coal company at Jimtown, tell the jury whether or not there is many times more acres of level land in Morgantown and in the vicinity of the lot you bought than there is in the vicinity of the land proposed to be taken or taken in this case?" He answered: "In this case of the Great Scott Coal & Coke Company there is a very limited parcel of land that is at all adapted to such purposes as stores, residences, or any where near that section and I presume that the Great Scott Coal & Coke Company had bought this property years ago with the idea of developing what they had back of it and that was all they could have done if they done anything." Before this

question and answer witness had been permitted to state that he had paid $28,000.00 for a lot in Morgantown, three years before that, having a frontage of 47.5 feet and a depth of 130 feet, and the coal company's witness Lemley, over objection, was likewise permitted to testify he had sold a lot in the same vicinity five years before at the price of $3,750.00. The values of these properties for comparison were too remote in time, place and circumstances, to shed any light upon the question before the jury, and it was error to admit this testimony. *Benham* v. *Dunbar*, 103 Mass. 365; *Green* v. *City of Fall River*, 113 Mass. 262; 2 Lewis on Em. Dom., (3rd ed.) section 662; *Guyandot Valley R. Co.* v. *Buskirk, supra.*

The next point is, that the witnesses Lemley and Tait, for the coal company, were permitted, over objection, to testify as to the prices paid by the railroad company for other properties taken or purchased by the railroad company for its railroad. Such evidence, the authorities hold to be incompetent and prejudicial, for the reasons stated in 2 Lewis on Em. Dom., (3rd ed.) section 667, as follows: "Such sales are not a fair criterion of value, for the reason that they are in the nature of a compromise. They are affected by an element which does not enter into similar transactions made in the ordinary course of business. The one party may force a sale at such a price as may be fixed by the tribunal appointed by law. In most cases the same party must have the particular property, even if it costs more than its true value. The fear of one party or the other to take the risk of legal proceedings ordinarily results in the one party paying more or the other taking less than is considered to be the fair market value of the property. For these reasons such sales would not seem to be competent evidence of value in any case, whether in a proceeding by the same condemning party or otherwise."

The next point relates to the evidence of coal company's witness, Hoffman. Over objection he was permitted to say that only one of the grade crossings called for in the agreed order had been provided by the railroad company, and that not a good one. This, as an element of damage, was of course error. By a subsequent question, however, he was limited to the damage assuming the railroad company had fully complied with the requirements of that order. Nevertheless, the

evidence complained of was in some degree prejudicial, and should not have been allowed.

Next, it is complained that the witness Wade, not an expert, was asked to define special benefits. Of course he was not competent to answer this question of law, but the question also called for his judgment as to the damage to defendant's property, deducting special benefits, but not general benefits. His answer was favorable to the railroad company, for he said he thought the building of the railroad right along in front of the coal company's tipple was quite an advantage to that company. So there was no prejudicial error.

Another point much relied on is, that the witness A. H. Tait was permitted to testify, over objection, that the coal company by the loss of the use of its tram way and tipple, after July 24, had been deprived of the sale of coal by barges or to coal boats, that the company had a nice business of that kind; that tow boats would come to its place from Pt. Marion and even Lock No. 15, to get coal, and that the damage on that account would be in the neighborhood of $12,000.00; and also to give evidence of other losses in business on the river. He had previously stated that the coal company had operated the tram way and tipple from February until July 24, but that after that time the tram way had been cut by the railroad tracks, and could not be used, and that the tipple had been moved by the railroad company to get steam shovels under it, and the business greatly interfered with. We do not think this was proper testimony. Loss of profits to business, due to interruption by the building of the railroad, were too remote and speculative to be the subject of jury consideration. Besides, no data were given, no facts or figures were furnished upon which the jury could have arrived at any just result. While it is proper to show how the property is used, as an element of value, it is incompetent to go into the question of profits, derived from the business carried on upon it. Incidental loss or inconvenience in business, resulting from removal or changes made necessary upon the taking of the property, say the books, must be borne by the owner for the sake of the general good; and are not the subject of damages in condemnation. 2 Lewis on Em. Dom., section 727; *Richmond etc. R. Co.* v. *Chamblin,* 100 Va. 401; *Railroad Co.* v.

*Shepherd,* 26 W. Va. 672, 682. This point of error is affirmed.

It is next complained that witness John C. Price was per-mitted to give evidence, tending to show, as an element of damage for consideration by the jury, that the building of applicant's railroad had opened up competition with other operations along its line, to the detriment of the coal company. Such an element of damages, besides its speculative character, could certainly not be allowed. This point is also affirmed.

Another point on the evidence, also urged, is that the rail-road company was denied the right to show that the residue of the land was worth $100.00 per acre more after than before the building of the railroad, excluding general benefits. We think this was properly rejected. The question before the jury was not the difference in value of the residue after the railroad had been built, but what was the difference in value immediately before and immediately after the taking of the part taken by the railroad company.

Again applicant complains that it was denied the right of showing by the witness Dailey the cost of remodeling the old tipple of the coal company, or the building of a new one, so as to deliver coal therefrom into cars on the railroad com-pany's tracks. We do not exactly see the pertinency of this evidence. We presume, however, that as one of the elements of damage urged by the coal company was that it had been crowded out by the railroad company, the purpose was to show that at a minimum cost the coal company could thereby acquire as good if not better facilities for handling its coal than by building its own side tracks. If such was the purpose of the proposed evidence, we think it was competent, and should have been admitted.

Another of the numerous points of error is, that the court, on the cross-examination of the railroad company's witness John C. Price, and on overruling an objection to a question propounded on cross-examination, stated in the presence of the jury, over objection of counsel for the railroad company, that: "This question is proper and may be answered because if it is answered in the affirmative it does show by reason of that being in a very narrow gorge it has a peculiar value to this railroad company and to this coal company." We do not think the remarks of the court in the presence of the jury

were exactly proper. The reason given for admitting the evidence may have been a good one, and proper for the ears of counsel, but in so far as the court gave expression as to the weight or the effect of the evidence, the remark was somewhat prejudicial. The general rule is that any opinion by the court as to the weight or effect to be given the evidence submitted is regarded as an invasion of the province of the jury, and prejudicial to the parties. *Richmond etc. R. Co.* v. *Noell,* 86 Va. 19; 5 Ency. Dig. Va. & W. Va. Rep., 352; *Ross* v. *Gill,* 1 Wash. (Va.) 87; *McDowell* v. *Crawford,* 11 Grat. 377; *State* v. *Hurst,* 11 W. Va. 54; *State* v. *Thompson,* 21 W. Va. 741.

The next point is that the verdict was excessive. Counsel rely for reversal on this ground on *Gas Transportation Co.* v. *Wilson,* 70 W. Va. 157; *Railway Co.* v. *Davis,* 58 W. Va. 627; *Railway Co.* v. *Nighbert,* 46 W. Va. 202. As we are called upon to reverse the judgment for numerous other errors, including the improper admission of evidence, some of it of a speculative character, and the evidence may be properly limited and proscribed on another trial, we think it would be improper to comment on the evidence at this time. True, the verdict is very large in comparison with the finding of the commissioners, and as was said in *Railway Co.* v. *Davis, supra,* "how far the verdict of the jury was influenced by the speculative evidence permitted to go to the jury cannot be known, and as the case must again be tried before another jury it is not deemed proper to discuss the evidence."

Another point made is that the verdict was improper, in failing to assess damages to other parties in interest, and that it was error not to assess damages and compensation as a whole. Citing 15 Cyc. 895, and *Bridge Co.* v. *Comstock,* 36 W. Va. 263. As we understand the record the damages assessed in favor of the coal company constituted the whole, for it was shown from the final judgments that the rights of other parties in interest and brought in on the trial were released. If this is so, there was no error.

Another point made against the verdict is that it did not purport to find compensation and damages in consideration of and subject to the reservations, restrictions and limitations contained in the agreed order. As practically all the evidence seems to have been so limited, and the instructions given so

limited the jury in their finding, we do not think we can assume that the verdict rendered was not upon this basis. We, therefore, deny this point.

And lastly, it is assigned as error, that the court, before final adjudication, paid over to the coal company the sum of $4,550.00 and interest, found by the commissioners and paid into court. The verdict was rendered on May 14, 1913; the order directing this money to be paid over to the coal company was entered May 22, 1913; the final judgment overruling the motion for a new trial and giving judgment against the railroad company for the sum of $7,950.00, the sum found by the jury in excess of the amount so paid into court, was pronounced on the 27th day of May, 1913. In our opinion this question is settled by our statute, section 21, chapter 42, serial section 1720, Code 1913. Among other things it provides: "But if what was so paid exceed the sum ascertained by such subsequent report or verdict, the excess shall be paid back to the applicant out of the fund in court, *or by the persons to whom the same shall have been paid.*" While neither this section, nor any other section of this chapter, particularly authorizes the court, on application, to pay over the money so paid into court before final judgment, we think the provision of the statute just quoted, contemplated such payment to the owner, lienors or others entitled thereto, and if so paid before verdict and final judgment, the court is authorized by this section to order the excess paid back, if the subsequent report or verdict be less than the amount paid in. We, therefore, negative this point.

For the errors found and affirmed in the foregoing opinion, we reverse the judgment of May 27, 1913, and remand the case for a new trial, but the judgment of May 22, 1913, ordering the amount paid into court by plaintiff paid to defendant, is affirmed.

*Reversed and Remanded.*