# CHARLESTOWN.

SHENANDOAH VALLEY RAILROAD Co. *v.* SHEPHERD *et al.*

Submitted September 8, 1885.—Decided October 2, 1885.

1. As a general rule the compensation to the owner for land taken for public purposes is to be estimated by reference to the uses for which the appropriated lands are suitable, having regard to the existing business or wants of the community or such as may be reasonably expected in the near future. (p. 677.)

2. In estimating the value of the residue of a tract, a part of which has been taken for public purposes, the commissioners or jury should consider only such damage, as is peculiar to that particular tract, and not that which it suffers in common with all other tracts in the neighborhood. The damage to be estimated is that which directly or proximately results from the taking or use of the land for the purpose, for which it was taken, but should

not include such damage as arises from the fact, that the use of the land taken for the purposes, for which it was taken, would injuriously affect any business carried on upon such tract of land by increasing competition or in any like manner. Such injury is not an injury to the land but to the business, which is or may be transacted upon the land. (p. 681.)

GREEN, JUDGE, furnishes the following statement of the case :

This was a proceeding in the circuit court of Jefferson county instituted by the Shenandoah Valley Railroad Company to condemn a strip of land sixty-six feet wide and ninety feet long lying on the bank of the Potomac river at Shepherdstown in said county belonging to Fanny Shepherd, Alexander B. Shepherd and R. Davis Shepherd, in which Mrs. Elizabeth S. Shepherd had a dower interest. The proceedings in the case were all regular, and the commissioners appointed by the court reported, that they were of opinion, that $1,587.50 would be a just compensation for so much of said real estate as was proposed to be taken by the Railroad Company, which land was described in the report and stated to be then occupied partly by the road-bed and track of said railroad and partly by the abutment and southern end of the bridge of said railroad company where it crosses the Potomac river, as well as for damage to the residue of said tract beyond the peculiar benefits, which will be derived in respect to such residue from the work to be constructed. This report was filed May 15, 1883. The Shenandoah Valley Railroad Company excepted to the report and demanded a jury to ascertain the compensation to be paid the defendants for this strip of land taken from them by the company. On March 4, 1884, the jury who had been properly elected, tried and sworn and had viewed the premises and heard the evidence and arguments of counsel, found their verdict ascertaining, the compensation due the defendants for this strip of land proposed to be taken by the plaintiff to be $1,000.00 including damage to the residue of the real estate beyond the peculiar benefits, which will be derived in respect to such residue from the construction of this railroad. The strip of land taken from the defendants is described in this verdict, just as it was described in the application of the railroad company for the appointment of the commissioners.

The Shenandoah Valley Railroad Company moved the court to set aside this verdict and to grant it a new trial, which the court refused and entered up a judgment for the defendants against the plaintiff for their costs. The plaintiff took a bill of exceptions called in the record, bill of exceptions No. 3, to this ruling and judgment of the court; and in this bill of exceptions all the facts proven and all the evidence are certified. From the evidence so certified and the facts apparent on the face of the deed, under which the defendants claim, and a map which was also given in evidence, it appears, that all the facts proven before the jury were as follows : The tract or parcel of land owned by the defendants, through which the railroad passes, lying principally between two streets of Shepherdstown, if they were extended to the Potomac river, and belonging to these defendants and all claimed under the same deed, was a narrow slip of ground immediately on the bank of the Potomac and extending down the Potomac river in an easterly direction some three fourths of a mile to where Teagues run empties into the Potomac. This long slip is only about thirty yards wide and is a cliff on the Potomac river. The land to be taken by the railroad is the piece occupied by the railroad in crossing this long slip and is ninety feet long by sixty-six feet wide. It constitutes a natural abutment for the railroad bridge across the Potomac ; and it would save between $6,000.00 and $7,000.00 to the railroad company in building this bridge, as it would cost the company this amount to build an equally good artificial abutment.

If in estimating the value of this parcel of land we were to exclude its enhanced value because of its being a natural abutment for a bridge, its value would be fifty dollars. The facts bearing on the estimate of the damage to the residue of the tract of land owned by the defendants, caused by the construction of the railroad is as follows : This long slip of land along the Potomac described in the deed, under which the defendants claim as "river cliff on the Potomac down to Teagues run," connects with the parcel of land owned by the defendants, which lies principally between two parallel streets of Shepherdstown, if they were extended to the Potomac river, the point where this narrow slip or "Potomac cliffs" con-

nects with this parcel of land lying principally between the extension of these streets to the Potomac river, is from fifty to seventy-five yards up the river from the railroad bridge. The street, which if extended would bound this parcel of land on the eastern side, is called Mill street; and on the western side it is bounded principally by a county-road extending from the end of Princess street in Shepherdstown to the Potomac river, where there is a county-bridge across the Potomac. This county-road runs nearly parallel with Mill street extended, so that this parcel of land is in its general form a paralellogram and contains according to the testimony of Mrs. Elizabeth S. Shepherd about two acres, though the map indicates that it contains a considerably larger quantity. On this parcel of land of two acres or more are a sawmill, a grist-mill and a warehouse and along the river part of it is a wharf. As the railroad-track lies entirely east of Mill street extended, the grist-mill must be at least one hundred yards from the railroad-track, and the saw-mill at least 150 yards from it. The railroad-track must also be on ground very much elevated above either the saw-mill or grist-mill, as the railroad is on a high bluff, while these mills are on a run, which empties into the Potomac river 200 yards from the railroad-track. The warehouse is about 200 yards from the railroad-track on the extreme western border of the tract and on the county-road leading to the bridge. Very near this county-bridge is a ferry across the Potomac. The exact location of the wharf is not noted on the map but it can not be less than fifty yards from the railroad-track and bridge. There was no testimony before the jury to indicate that any damage would result to the residue of the tract by the construction of the railroad, except that Mrs. Elizabeth S. Shepherd, one of the defendants, says that the warehouse, wharf and mill-property were greatly depreciated by the fact that the railroad company had taken the sixty-six by ninety feet for the purposes, to which it is to be appropriated.

During the progress of the trial two other bills of exceptions were taken by the Shenandoah Valley Railroad Company. They were as follows:

"Bill of Exceptions No. 1.

"Be it remembered that on the trial of the cause testi-

mony was introduced by the defendants tending to show that the bank of the river embraced within the 90x66 feet proposed to be taken by the Shenandoah Valley Railroad Company and belonging to the defendants, was valuable as a natural abutment for a bridge; thereupon the court, at the instance of the defendants, instructed the jury as follows:

"INSTRUCTIONS.

"The court instructs the jury that in ascertaining the value of the land proposed to be taken by the S. V. R. R. Co., they will enquire into its value for any or all purposes for which it may be legitimately used or appropriated, including its value to the proprietors as a natural abutment for a bridge, but in considering its value they will do so without considering its enhanced value by reason of the construction of the said Shenandoah Valley Railroad.

"And at the instance of the said Shenandoah Valley Railroad Company, the court instructed the jury as follows:

"INSTRUCTIONS.

"The court instructs the jury that in estimating the value of the land taken by the Shenendoah Valley Railroad Company for its purpose in this case, it will consider its actual value at the time it was taken and not its prospective value with reference to any mere possible uses, but only with reference to such uses as may be reasonably expected in the immediate future.

"To the granting of which said first named instruction, the Shenandoah Valley Railroad Company excepted, and prayed that this its bill of exceptions should be signed, sealed and enrolled as a part of the record, which is accordingly done."

"BILL OF EXCEPTIONS, No. 2.

"Be it remembered that on the trial of the issue in this case, the defendants introduced as a witness Mrs. E. S. Shepherd, to whom they propounded the following questions, after having proven the facts set out as proven in bill of exceptions No. 3 as to the improvements and uses of the property shown in part by plat B., to which reference is hereby made:

"First Question.—Was the wharf property depreciated by reason of the taking of the 90x66 feet for the purposes for which it was sought to be appropriated?

"Second Question.—Was the mill property depreciated by reason of the taking of the 90x66 feet for the purposes for which it was sought to be appropriated?

"Third Question.—Was the warehouse property depreciated by reason of the taking of the 90x66 feet for purposes for which it was sought to be appropriated?

"To which said several questions the Shenandoah Valley Railroad Company objected, but the court overruled the said objections, and the said witness answered the said questions respectively as follows:

"1. The wharf property was greatly depreciated thereby.

"2. The mill property was greatly depreciated thereby.

"3. The warehouse property was greatly depreciated thereby.

"To which said action of the court overruling the said objections and permitting the said witness to answer the said questions as aforesaid, the said Shenandoah Valley Railroad Company excepted, and asked that this its bill of exceptions should be signed, sealed and enrolled and made a part of the record, which is accordingly done."

To the judgment of the circuit court rendered March 4, 1884, refusing to award a new trial to the Shenandoah Valley Railroad Company it obtained an appeal and *supersedeas*.

*W. H. Travers* for plaintiff in error.

*G. Baylor* and *G. M. Beltzhoover* for defendants in error.

GREEN, JUDGE:

The instructions set out in the first bill of exceptions were intended to lay down a rule to govern the jury in its appraisement of the value of the parcel of land ninety feet long by sixty-six feet wide taken by the railroad company from the defendants. Upon this question Judge Field in delivering the opinion of the Supreme Court of the United States in *Boom Company* v. *Paterson*, 98 U. S. 408, says: "So many and varied are the circumstances to be taken into account in determining the value of property condemned for public purposes, that it is perhaps impossible to formulate a rule to govern its appraisement in all cases. Exceptional circumstances will modify the most carefully governed rule; but as a general

thing, we should say that the compensation to the owner is to be estimated by reference to the uses for which the property is suitable, having regard to the existing business or wants of the community, or such as may reasonably be expected in the immediate future." Just preceding this Justice Field had said: "In determining the value of land appropriated for public purposes the same considerations are to be regarded as in a sale of property between private parties. The inquiry in such cases must be what is the property worth in the market, viewed not merely with reference to the uses to which it is applied, but with reference to the uses for which it is plainly adapted; that is to say, what is it worth from its availability for valuable uses. Property is not to be deemed worthless because the owner allows it to go to waste, or to be regarded as valueless because he is unable to put it to any use. Others may be able to use it and make it subserve the necessities or conveniences of life. Its capability of being made thus available gives it a market-value which can be readily estimated."

In that case the defendant, Paterson, owned certain islands in the Mississippi river above St. Anthony's Falls. The position of these islands especially fitted them in connection with the west bank of the river to form a boom of very extensive dimensions at a very small cost. The jury found a general verdict for $9,358.33, but found specially, that the compensation which the owner of the land was entitled to, if the adaptability of these islands for boom-purposes was not considered, would be $300.00; but if it was considered, his just compensation they estimated at $9,058.33. The company asked a new trial and the court granted the motion, unless the proprietor would reduce the verdict to $5,500.00, which he elected to do; and judgment was rendered accordingly. In the opinion of the Supreme Court it appears, that the boom-company claimed, that no one but them could use these islands for boom-purposes, they having by their charter a monopoly of this business on the river. And, as I understand the court, if this had been true, the value of these islands for boom-purposes should not have been included in the estimate of the proprietor's compensation; but as this boom-company had no such monopoly, the special value of

these islands for boom-purposes was properly considered in fixing the compensation of the proprietor. (pp. 408–9.) It appears from this case, that the Mississippi river is a navigable stream above St. Anthony's Falls, and that booming of timber on it was a business; and though the evidence is not stated very fully, yet from what is said in the opinion, I think, the inference is but fair, that this business of booming was such as to add to the market-value of these islands because of their adaptability for booming-purposes. In the paragraph we have quoted Judge Field says : " Regard should be had to the existing business or wants of the community or such as may be reasonably expected in the immediate future." I presume in this case there must have been evidence, which justified the jury and the court in holding, that the market value of these islands was increased by the condition of the existing boom-business on this part of the Mississippi river or by what could be regarded would be the condition of this booming-business in the immediate future. I am the more persuaded that this was so, because the court cites approvingly on page 410 the case of *Young* v. *Harrison*, 17 Ga. 30, where the court say of this case : " In it, where land necessary for the abutment of a bridge was appropriated, the supreme court of Georgia held, that its value was not to be restricted to its agricultural or productive capacities, but that enquiry might be made as to all the purposes to which it could be applied having reference to the existing and prospective wants of the community. Its value as a bridge-site was, therefore, allowed in the estimate of compensation to be awarded to the owner." My inference from this case, relied upon by the defendant in error, is that which is drawn by the reporter in the syllabus of the case and that is : " In determining the value of land appropriated for public purposes, the same considerations are to be regarded as in a sale between private parties, the enquiry in such case being, what, from their availability for valuable uses, are they worth in market." And " as a general rule, compensation to the owner is to be estimated by reference to the uses for which the appropriated lands are suitable, having regard to the existing business or wants of the community, or such as may be reasonably expected in the immediate future." It seems

to me, that the law is as correctly and as definitely laid down
in the syllabus of this case as it can well be done, except that
instead of using the words in the conclusion "or such as may
be reasonably expected in the immediate future," I would
deem the law. more accurately stated if the language had
been : " or such as may be reasonably expected in the near
future." The value of property at a remote future time is
inadmissable as a basis for assessing its present value ; it
partakes too much of the speculative. See *Everett* v. *Union*
*Pacific Railroad Co.*, 10 American and English Railway Cases,
204, 206. The wants of the community in the future must
be in a future not so remote as not to affect the present market
value. (See *Cobb* v. *Boston*, 112 Mass.. 183.)

Not confining ourselves to the facts set forth in the pream-
ble to the instructions given by the court, as set forth in the
first bill of exceptions, but looking to all the evidence in the
case, as set forth in the third bill of. exceptions, which we
have a right to do, can the plaintiff in error object to the
instructions contained in the first bill of exceptions ? If we
take the two instructions set out in the first bill of exceptions
together, it seems to me, while the law is not as definitely
and clearly laid down, as it might have been in connection
with the actual evidence in the case, and while the first instruc-
tion, the one given at the instance of the defendants, was
perhaps calculated from the nature of the facts in proof in
the case to mislead the jury, yet, as the law laid down by it
can not be in itself said to be erroneous, and as the plaintiff
asked no modification of the instruction, I do not think a
new trial ought to be awarded because of anything appearing
in the first bill of exceptions. But this instruction, if the re-
quest had been made by the plaintiff below, ought to have been
modified so as to read: "The court instructs the jury, that
in ascertaining the value of the land proposed to be taken
by the Shenandoah Valley Railroad Company they may
properly enquire into its value by reason of its being a
natural abutment for a bridge across the Potomac, but in
making such estimate they must have reference to the
existing needs of the community for another bridge across
the Potomac at or near Shepherdstown or to the probable
need of such other bridge across the Potomac at or near

Shepherdstown in the near future; but in considering the market-value of this natural abutment of this bridge they must not consider the uses to which the Shenandoah Valley Railroad Company had put this ground in constructing its railroad." When so modified and given the instruction asked by the railroad company set out in the first bill of exception need not have been given, as it would have been covered by the above instruction.

Having stated as accurately as can be done the rule proving the appraisement of the real estate actually taken, I will now consider how the damage to the residue of the tract beyond the peculiar benefit to the same from the construction of the road should be estimated. In the first place it is settled that no benefit, which the residue of the tract derives from the construction of the road in common with other adjoining tracts, can be abated from the damage to the residue of the tract; as by the very words of the statute, to justify such abatement, the damage must be abated only by the *peculiar* benefit to the tract; such for instance as draining it by the construction of the railroad. It would be obviously unjust to the proprietors, if by an abatement of their damages they were made to pay for benefits enjoyed by them in common with persons, through whose lands the railroad did not pass. It would seem to be equally obvious, that the railroad company ought not to be required to pay for damage to the residue of the tract, where such damage was only such as the proprietors of the land suffered in common with other owners of land, through which the railroad did not pass, where such damage was such as such owners, through whose land the railroad did not pass, could not recover for. In other words the railroad company ought not to pay the proprietors for damage to the residue of the tract, when such damage was of such a character, as made it common to the entire neighborhood, though it may have arisen from the construction and operation of the railroad. Such damage is *damnum absque injuria* and ought not to be recovered. As for example damage resulting from the loss of custom to one's mill, wharf or store, though they be on the tract of land, through which the railroad passes, is not such damage as can be estimated by the commissioner or by the jury in as-

sessing damage to the residue of the tract. Such damage is only such as is sustained by the proprietors of the tract, through which the railroad passes, in common with all other owners of mills, wharves and stores in the neighborhood, on land through which the railroad did not pass. It is not properly damage to the property arising from the construction of the railroad, but is more properly speaking damage to the trade of the proprietors resulting from the subsequent use of the railroad. (*Cadonian Railway Company* v. *Walker's Trustees*, L. R. 7 App. Case 6; Am. & Eng. Railroad Cases, 536.7; *Brand's Case*, 4 H. L. 171; *Rex* v. *London Dock Co.*, 5 Ad. & E. 163.)

To justify the making of an allowance for damage to the residue of the tract, the damage must be such as results directly and proximately to the property itself from the construction and operation of the railroad, such for instance as the obstruction of access to the property, the obstructing or diverting of a mill-race, the increased danger of fire to a store in consequence of the proximity of the railroad-track. It is very obvious that no damage of this description was sustained by the mills, wharf or warehouse in the case before us, regarding them, as I do, as a part of the tract, through which the railroad passed. The saw-mill and grist-mill were on a run which flowed through this tract of land; but the map shows, that the railroad was constructed on a bluff, which was not nearer to this run, where it passed through this tract, than 100 yards. Of course the mill-races of these mills could have neither been obstructed, diverted nor in any manner interfered with by the railroad; and the mills themselves could have been in no way directly injured by the construction or running of the railroad. It could not have endangered them by fire from the locomotives; it could in no way have obstructed any road to them or in any way have injured them proximately or directly; and the same is obviously true of the warehouse, which was situated on a road some 200 yards distant from the railroad; and though, for all that appears in the record, the wharf may have been within fifty or seventy-five yards of the railroad, yet, as it was on a level with the river, and the railroad was elevated above it on a bluff of a very considerable height, it is impossible that it could

have been injured in any manner directly ·or proximately by
the railroad.   No road to it could have been obstructed by the
railroad-track.   Nor could any other direct injury, which I
can conceive of, be done to it by the railroad.   It is true, the
map does not on its face show the elevation of the railroad
above the river, but it must have been considerable, as it was
necessarily on a level with the railroad-bridge, which must
have been considerably elevated above the river.

But it is contended by the appellee's counsel, that, though
all the evidence offered to the jury or all facts proven before
them during the trial were certified by the court, yet the
jury may have acted upon other facts not before this Court,
which they obtained by their personal view of the premises,
and therefore, as this Court can not know all the facts, on
which they acted, the verdict of a jury should never be set
aside by an appellate court, because the damages are regarded
as excessive.   It is unquestionably true, that an appellate
court ought never to set aside the verdict of a jury in a con-
demnation case, where the jury have viewed the premises,
unless the facts proven in court before the jury are such as
show their verdict to be grossly excessive in amount, after
supposing that everything was seen by them upon the view,
which tended to increase the damage, which could be sup-
posed to be seen on a view of the premises, and which is not
utterly inconsistent with the facts actually shown to have
been proven in court.   Such utterly inconsistent facts will
not however be supposed by the appellate court to have ap-
peared upon the view of the jury.   Thus in this case this
Court can not suppose, that the view of the jury showed
them that the warehouse was endangered by fire from the loco-
motives, as it was proven by the map, which was before the
jury at the trial, that it was 200 yards distant from the rail-
road.

I am therefore of opinion, that the circuit court erred in
permitting the three questions set out in the second bill of
exceptions to be propounded to Mrs. Shepherd, one of the
defendants.   In answer to these questions she said, that
the wharf-property, the mill-property and the warehouse-
property were greatly depreciated by reason of the taking
of ninety by sixty feet of the land of the defendants by

the railroad company for the purposes, for which it was sought to be appropriated by the company. She obviously meant that the business done at these mills, warehouse and wharf would be greatly injured by the competition which the running of cars on the railroad would bring about. This, we have seen, was a damage, which the jury had no right to consider in making up their verdict. The record shows by the preamble set out in bill of exceptions No. 2, that the facts, which had been proven, when these questions were propounded, that neither of the mills, the warehouse, nor the wharf could by any possibility be injured or damaged proximately or directly by the building of the railroad; and as this was entirely obvious, the court ought not to have permitted questions to be propounded to Mrs. Shepherd, her answers to which could not according to a correct view of the law tend to enlighten the jury in the performance of their duty but might as doubtless they did tend to mislead them. Such questions might be very proper, if the facts before the court did not show, as in this case they did, that the answering of them could not enlighten the jury but might mislead them.

Of course I can not tell how the jury arrived at their verdict of $1,000.00 in this case; but, as the proof was clear, that excluding this supposed damage to the mills and warehouse and wharf and the value of the land as a natural abutment for a bridge it could not have exceeded $150.00, the estimate of the jury must have been made up to a large extent from this supposed damage or from a valuation by the jury of this land as a natural abutment to a bridge. Now I have shown, that in valuing this ground as a natural abutment to a bridge the jury must have reference to the existing and prospective wants of the community, whom the bridge would accommodate. Upon this important point there was absolutely no evidence before the jury except that to be derived from the map produced in evidence and what appeared upon it. It is true the jury and this Court can take judicial notice, that the Chesapeake and Ohio canal runs along the bank of the Potomac river opposite Shepherdstown, and from this fact an inference might justly be drawn, that there would be considerable trade and business between Shepherds-

town and Jefferson county and this canal, and that a bridge would be wanted probably at Shepherdstown to accommodate this trade and business. But the map produced before the jury had marked upon it a road from Shepherdstown to the Potomac and not only a county-bridge across it but also a ferry. Whether these were sufficient to accommodate the public, or whether there was then a demand for another bridge at or near Shepherdstown for the accommodation either in reference to the existing business or to the prospective business in the near future could not be inferred from this the only testimony before the jury. It could not be ascertained by an inspection of the premises by the jury upon their view of the ground but could only be proven by witnesses before the jury. No such proof was offered; and it does seem to me, that upon correct principles of law, such as I have laid down, on this very scanty and unsatisfactory evidence as to the existing business or wants of the community or such as might reasonably be expected in the near future the jury would not have been justified in assessing the value of this ground as a natural abutment for a bridge across the Potomac river at $950.00, as they, it would seem, must have done, unless they allowed for this supposed damage to these mills, warehouse and wharf, which they ought not to have done.

I have stated, that with the exception of the facts appearing on the map before the jury there was no evidence of what demand, if any, there was for a bridge other than the one then in existence across the Potomac at or near Shepherdstown. It is true, that Mrs. Shepherd, one of the defendants, does say, that she estimates this ninety feet by sixty feet taken by the railroad company at $5,000.00. "And she estimates this value from the fact that it is used as an abutment for the railroad-bridge; that she had always valued it as an abutment for a bridge, before the railroad came there; was worth that much not to have a bridge built upon it." This opinion of Mrs. Shepherd, a party interested, would certainly be a very unsafe foundation for the verdict of a jury. She says she always valued it as an abutment for a bridge. In this she was probably right. But that furnishes no information, on which a jury could fix its value. What she meant by saying it "was worth $5,000.00 not to have a bridge built

upon it," is difficult to say. The literal meaning of such language is, I suppose, that in her opinion it was worth $5,000.00 leaving out of consideration its value as a natural abutment for a bridge. But it is impossible that she could have meant this, as four farmers residing in Jefferson county concur in estimating this property, which they had examined, as worth but $50.00, excluding from their estimate its value as a natural abutment for a bridge ; and there is no evidence to show that this is an under estimate. I suppose Mrs. Shepherd meant to say, she thought this property was worth $5,000.00 even though the railroad company had not built their bridge there. But as she furnishes none of the facts which it has been shown is necessary for any one to put a proper estimate on the present value of a natural abutment for a bridge, her opinion was entitled to very little weight before the jury.

For these reasons I am of opinion, that the circuit court erred in not setting aside the verdict of the jury and granting a new trial on the motion of the railroad-company; and that for that reason its judgment should be reversed and a new trial awarded, and the cause remanded to the circuit court to be proceeded with according to the principles laid down in this opinion.

REVERSED. REMANDED.