# CHARLESTON.

GAULEY & EASTERN RAILWAY CO. v. C. A. CONLEY *et al.*

Submitted September 9, 1919.    Decided September 16, 1919.

1. EMINENT DOMAIN—*Market Value of Property—Evidence.*

   In a proceeding to condemn private property for public use, evidence of past annual profits derived from a business conducted on the property, in the form of net income arising from such business, offered as an index to the market value of the property, is ordinarily inadmissible, because the extent to which such income arises out of the property used is uncertain, it being dependent upon the capital invested, business conditions obtaining and the trading skill and business capacity of the owner, as well as adaptability of the property to the business. (p. 492).

2. SAME—*Removal of Business from Condemned Property—Disadvantage of New Location—Admissibility of Evidence.*

   If, in such case, the business is to be continued at another location and on property different from that involved in the proceeding, evidence of the relative inconvenience and disadvantages of the new location is inadmissible, because the constitutional guaranty of indemnity does not extend to the business conducted upon the property taken. (p. 492).

3.  SAME—*Removal of Business—Construction of New Building—Damages.*

    Nor, in the event of the erection of a new building on a different piece of land, in which such business is to be continued, can the cost thereof be included in the compensation or damages. awarded; or proved as tending to show the value of the old building, in the absence of disclosure of like or closely similar construction and conditions in all respects.   (p. 495).

4.  SAME—*Damages—Evidence—Contiguous Lot.*

    In such case, the admission of evidence of damages to a lot not involved in the proceeding nor used in connection with the property proceeded against, though contiguous to it, is erroneous. (p. 496).

5.  SAME—*Damages—Evidence—Offer to Owner.*

    It is also erroneous, in such case, to permit the land owner to prove an inquiry to him by an agent and attorney of the condemnor, as to whether he would accept a named sum of money, in payment of compensation for the property to be taken and damages to the residue, without proof of the agent's authority to fix and determine the amount of such compensation and damages.   Evidence. of such an inquiry is also inadmissible because it does not fairly tend to prove an admission as to the value of the property.   (p. 496).

6.  SAME—*Taking of Part of Lot—Proof of Value.*

    Ordinarily, when only a part of a lot or parcel of land is taken under the power of eminent domain, the proof of value should be limited to the part actually taken, and, as to the residue, the evidence should be limited to damages; but, when virtually all of the property is taken and the remnants are relatively worthless, the value of the entire tract or lot may be established and an allowance made for the value of the remnants.   (p. 496).

7.  SAME—*Damages—Evidence—Other Suitable Property.*

    After the right to take the property has been adjudicated and acquiesced in, it is inadmissible to prove, upon the inquiry as to compensation and damages, that the condemnor could have obtained other property equally as well suited to its purposes. (p. 496).

8.  EVIDENCE—*Opinion—Value of Property.*

    Upon such a trial, a witness cannot base his opinion as to the value of the property upon "the possibility or impossibility of securing other locations" for the business conducted upon it. (p. 496).

84 W. Va.

9. EMINENT DOMAIN—*Value of Property—Evidence—Assessment.*

> To be admissible, by virtue of sec. 115, ch. 29 of the Code, as evidence of the value of property proceeded against under the power of eminent domain, the assessment thereof for purposes of taxation, last certified before the beginning of the proceeding, must be limited to the property so proceeded against and must not include it and other property as a single or combined piece, unless the property is of uniform value and appears to have been assessed by the acre or by the lot.  (p. 498).

Error from Circuit Court, Fayette County.

Condemnation proceeding by the Gauley & Eastern Railway Company against C. A. Conley and others. Verdict and judgment for defendants, and plaintiff brings error.

*Reversed and remanded.*

*W. N. King, Leroy Allebach,* and *Dillon & Nuckolls,* for plaintiff in error.

*Magee McClung* and *C. R. Summerfield,* for defendants in error.

POFFENBARGER, JUDGE:

The verdict and judgment in this condemnation proceeding by a railway company to take, for its purposes, a portion of each of two small lots on one of which there was a horse and a mule barn and on the other a department store building, both in use at the time, are for $14,000.00, and the applicant complains of them.

The dimensions of the barn lot were, substantially, forty by eighty feet, and, of the other lot forty by fifty-four feet. The railroad right of way line cut into both lots to a depth of about thirty feet and ran through the building on each. Each of the structures was a two-story frame building, the former about fifty-four by thirty-seven feet and the latter about thirty-six by fifty feet. On account of the unfavorable topography of the ground, the building sites had to be prepared at considerable expense, by the blasting out and hauling away of rocks and the construction of retaining walls. The barn seems to have been built in 1911, and the store house in 1914. Up to a date

prior to August, 1917, the time of the institution of this proceeding, the two defendants, C. A. Conley and E. D. Kincaid, were partners trading in horses and mules, and conducted their business in the barn just described. At the latter date, Conley, having bought out Kincaid, was conducting the horse and mule business alone. They, however, were owners in common of the two lots, and Conley was paying Kincaid $25.00 per month, as rental for his interest in the lot on which the barn stood, and the store building paid a rental of $60.00 per month.

The commissioners appointed in the usual way ascertained the compensation and damages respecting the lot on which the barn was at $4,800.00 and the lot on which the store building was at $5,500.00, making a total of $10,300.00. The railroad company paid this amount into court and obtained an order authorizing it to take possession of the property. The owners excepted to the report of the commission and demanded a trial by jury, solely on the question of the amount of compensation and damages, they having acquiesced in the court's decision affirming the right of the applicant to take the property for its railroad purposes, on payment of proper compensation and damages.

All of the numerous assignments of error, except two, are based upon rulings admitting evidence over objections of the plaintiff in error. One of the others denies the propriety of an instruction because it is based upon evidence alleged to be inadmissible, and the overruling of a motion to set aside the verdict, for insufficiency of the evidence and as being contrary to the clear and decided preponderance of the evidence, is the subject matter of the last one.

In the beginning of the trial, the court refused to permit the owners of the property to prove the net income and profits of the horse and mule business conducted in the barn on one of the lots, for the year immediately preceding the month of August, 1917, the date of the institution of this proceeding; but later, such evidence was admitted over an objection interposed by the applicant. In the argument submitted here in support of the court's final ruling upon the question, it is frankly admitted that such profits cannot be

included in the verdict as an element or item of compensation or damages, but it is earnestly · insisted that profits actually derived from business conducted on the property may be proved as one of the circumstances tending to show its market value. The distinction between the two offices of proof is obvious, but it does not overcome the objection to the evidence in question. There is a clear disstinction, but it is not coextensive with the difference. The rental value is always admissible because it is almost as fixed and certain as the market value of the property. The profits derive from a business conducted upon the property are uncertain and speculative in character, because the question of profit and loss, or the amount of profit, in the event of any, depends more upon the capital invested, general business conditions and the trading skill and business capacity of the person conducting it, than it does upon the location of the place of business. Profits already derived from a business may not be speculative, in the true sense of the term, but they would, nevertheless, constitute an uncertain measure of the value of the property upon which the business was carried on. The argument submitted in support of the admissibility of this evidence is plausible, but it is not in harmony with our decisions nor with the weight of authority throughout the country. *B. & N. Railway Co.* v. *Great Scott Coal & Coke Co.,* 75 W. Va. 423; *Shenandoah Valley Ry. Co.* v. *Shepherd, et als.* 26 W. Va. 672; *Richmond &c Railroad Co.* v. *Chamblin,* 100 Va. 401; *Braun* v. *Met. West Side Elevated Railroad Co.,* 166 Ill. 434; *Dupuis* v. *C. N. & W. Railway Co.,* 115 Ill. 97; *Sauer* v. *The Mayor,* 44 App. Div. (N. Y.) 305; *Matter of Gilroy,* 26 App. Div. (N. Y.) 314; *Newton* v. *Armstrong,* 19 N. Y. Supp. 573; *Edmands* v. *Boston,* 108 Mass. 535; *Cobb* v. *Boston,* 109 Mass. 438; *Becker* v. *P. R. T. R. Co.,* 177 Mass. 252; *Kossler* v. *Railway Co.,* 208 Pa. St. 50. Several of these cases specifically deny the admissibility of evidence of past profits derived from the land taken. Others rule out proof of future profits. No authority explicitly holding that, under ordinary circumstances, such evidence can be received to prove market value, has been cited or found.

In some jurisdictions, the peculiar character of the property to be condemned or the circumstances of the owner are permitted to vary the rule and to constitute an exception thereto. Thus, in *Montgomery County* v. *Schuylkill Bridge Co.,* 110 Pa. 54, in which the subject of condemnation was a toll bridge, the court recognized the exception and permitted the introduction of proof of past annual net profits as tending to show the market value of the bridge. Mr. Justice Paxson, delivering the opinion of the court said: ''The principle is well enough, but it has no application to the facts in this case. The property taken was of a peculiar character and can hardly be said to have had a market value.'' In *Railroad Co.* v. *Patterson,* 107 Pa. St. 461 the same court denied the right of a jury to take in consideration ,in its estimate of compensation and damages, any supposed loss of profits saying: ''Such an assessment would be purely speculative, and a rule which justified it would lead to most ruinous results.'' In *West Side E. R. Co.,* Siegel, 161 Ill. 638, the owners were allowed the cost of removal of their personal property from the real estate taken and damages for interruption of their business, but it was carefully noted that the allowances were made under an exception to the general rule. These cases are referred to merely to show that such exceptions are recognized in some jurisdictions. They are not applicable here, for there is nothing of an anomalous character in this case, justifying an inquiry as to the existence of such exceptions here.

All of the evidence tending to prove that the new barn is not as conveniently or advantageously located as the old one was improperly admitted. As in the case of profits, it pertains not to the value of the property taken or damage to the residue, but to the business of one of the defendants. For injury or detriment to that, the law does not require the condemnor to compensate. *B. & N. Railroad Co.* v. *Great Scott C. & C. Co.,* 75 W. Va. 423; *Shenadoah Valley R. Co.* v. *Shepherd,* 26 W. Va. 672. Such damages are said to be common to the owners of other like business enterprises of the community. The true reason may be that presumptively the world affords the trader just as good opportuni-

ties in other places, and the inconvenience and expense of finding another location are incidents of the business and not elements of damage to the property condemned, the constitutional guaranty being limited by its terms to compensation for property taken and indemnity for injury to property not taken. If an established business is to be continued on the residue of property only partially taken, an allowance for interruption to the business may possibly be justifiable on the theory of temporary loss of use of the residue of the property, but, as to this, we decide nothing, since the question does not arise, the business having been removed to another piece of land.

Evidence of the cost of construction of a new barn on another site was improperly admitted also. The applicant pays the value of the old barn and, out of that compensation or otherwise, the defendant should provide himself with a new one, if he needs or desires it. As the applicant takes a good portion of each building and the lots are too small to afford room for them on what remains of each lot, they are in legal contemplation wholly taken. In other words, they are to be treated, upon the inquiry as to compensation, as if they were wholly taken. *Ohio River R. Co.* v. *Gibbens,* 35 W. Va. 57; *Pumpelly* v. *Green Bay C.,* 13 Wall. (U. S.) 180; *Eaton* v. *Railroad Co.,* 51 N. H. 504. They are parts of the property taken and are, therefore, to be paid for. The condemnor is not required in addition to such payment, to provide new buildings. The case is entirely different from one in which a building can be moved over on to the untaken residue of a tract of land and its uses continued. In the latter case, cost of removal might be evidence bearing on the question of damages to the residue, but we do not have this question. The evidence of the cost of erection of the new barn is too uncertain as an element of proof of the value of the old one. It was put up on different ground, and the cost of preparation of the new site may have been considerably more or less than that incident to the construction of the old one, which included expensive excavation and retaining walls. If identity or close similarity of conditions in all respects would make this evidence admissi-

ble, as tending to prove the value of the old barn, it is not disclosed and the record does not indicate that it can be.

Between the two lots in question, there was another small one owned by Conley alone, and a part of which was taken. Kincaid alone owned another lot adjoining all three of those involved in the proceeding, and on it he resided in a house worth probably $3,000.00, but no part of that lot was taken. Defendants were allowed, over objections, to prove damages to his residence lot, resulting from the construction of the railroad in front of it. No direct effort is made in the brief for defendant in error to sustain this ruling, but it is treated as part of the evidence relating to an assessment for taxation, in an effort to apportion the assessment between the residence lot and the store lot, they having been assessed together. This effort at apportionment, however, did not necessarily involve proof of damage to the residence lot which was not involved in the proceeding. Admission of such proof was a palpable error. On this subject, the rule is strict. Lewis Em. Dom. 697, citing numerous cases sustaining the text.

Evidence of an inquiry made by an agent and attorney of the condemnor as to whether one of the defendants would accept· a certain amount of money by way of compensation and damages, if he were sole owner of the property, was admitted over objection. As there was no proof of any authority in the agent and attorney to bind his principal by an agreement as to the compensation and damages, this evidence was improperly admitted. One dealing with an agent must know the extent of his authority. *Uniontown Grocery Co.* v. *Dawson*, 68 W. Va. 332. The inquiry, if made, was no evidence of the value of the property and rights sought. It was an effort to ascertain the attitude of the defendants, and did not import purpose or willingness to pay the amount suggested. Besides, there is no proof of intent on the part of the principal to make the agent a witness either for or against it in the condemnation proceeding. It was bad for want of proof of authority in the agent and also for lack of tendency to prove value.

Ordinarily, it would be highly improper to permit the

owner to prove the value of the entire property, when only a portion of it is taken. But, in this case, the remnants are so small and unfavorably located, lying between the railroad track and a rock cliff, that their relative values practically amount to almost nothing and render the ordinary rule difficult of application. It is much more convenient and intelligible to state the entire values and then make allowances for the remnants. In point of utility, though not of law or fact, the entire lots, according to the evidence, were substantially taken, for the portions not taken were rendered almost useless. The buildings were, in a legal sense, wholly taken, because they had to be moved or destroyed. The assignment of error respecting proof of entire values is, for these reasons, held to be untenable.

As the right of the railroad company to take the land had been previously adjudicated and acquiesced in by the defendants, it was too late for them to set up the defense of lack of necessity for condemnation of these lots on the ground of existence of another way occasioning less damage. Introduction of evidence at this stage of the case to prove such a way could subserve no usefull or legitimate purpose. It pertains neither to the value of the land taken nor damages to the residue. It might become a fallacious basis of an inference of wantoness on the part of the railway company, in seeking unnecessarily to take improved or actually used property, when vacant property would answer its purposes equally well. If effective at all, such an inference could result only in prejudice against the railway company in the trial. The witness did say the ground on the other side of the road was very steep and rocky, but he had previously stated the condemnor could have gone that way and obtained cheaper property. The court should have sustained the motion to strike that evidence out.

A witness was improperly allowed to give his opinion as to the value of the property, "taking into consideration * * * * the possibility or impossibility of securing other locations." It was competent for the defendants to prove the location, the adaption of the property to any use of which it was susceptible, and the use to which it had been

devoted, as bearing on the question of market value, but, for reasons already stated, they could not have the jury take into consideration facts tending to prove detriment to their trading business conducted on the property. This involves no mere interruption to business to be continued on the residue of a tract of land, which may fall within an exception to the general rule. The taking of the land terminates the business on that tract, and the constitutional guaranty does not require reimbursement for loss of business.

The argument submitted in support of the admission of the tax assessment of the Kincaid residence lot and the store-building lot, treated as a single piece of property, at the sum of $17,280.00, fallaciously assumes that the assessor put the same values on the two pieces of property as the witnesses accorded to them, $5,000.00 on the residence lot and $12,-280.00 on the other. The unreliability of assessments as indices to the market values of property is shown by the fact that the assessment of these two pieces of property for the preceeding year was only $2,000.00. Assessments are so fearfully and wonderfully made that it would be unsafe to hazard a guess as to the method adopted in any particular case. The statute, Code, ch. 29, sec. 115, makes them admissible on questions of value, but, ordinarily, the assessment offered should be limited to the particular property involved in the proceeding, for, when two or more pieces are combined, there is no certain means of knowledge affording ground for a just and fair apportionment, unless the land is all of the same quality and appears to have been valued by the acre or the lot. The court should have excluded the assessment and refused the instruction based upon it.

As the evidence on the new trial will be different in material respects, from what it was on this trial, it is deemed unnecessary and might be improper, to enter upon any inquiry as to whether, as it stands now, it is sufficient to sustain the verdict.

For the erors noted, the judgment will be reversed, the verdict set aside and the case remanded for a new trial.

*Reversed and remanded.*