The STATE of Texas et al., Petitioners,

v.

Richard L. SCHAEFER et al., Respondents.

No. B–5392.

Supreme Court of Texas.

Dec. 17, 1975.

Rehearing Denied Jan. 14, 1976.

Haley, Fulbright, Winniford & Bice, W. C. Haley, Waco, for petitioners.

Dunnam, Dunnam & Dunnam, W. V. Dunnam, Jr., Waco, for respondents.

SAM D. JOHNSON, Justice.

This is a condemnation case wherein the State of Texas and McLennan County condemned .326 of an acre· out of a .559-acre tract located on, and for the reconstruction of, State and Federal Highway 31 and 84 in McLennan County, Texas. The property was owned by Richard L. Schaefer and his brother, Charles Schaefer, and had been used by them for the operation of a farm implement dealership. Trial to a jury resulted in a verdict of $25,000 for the property taken and $4,500 damage to the remainder.[1] Judgment on the verdict was rendered by the trial court. The court of civil appeals affirmed. 523 S.W.2d 424. We reverse and remand to the trial court.

The basic issue to be resolved is whether a landowner may establish the market value of condemned property by testimony showing the costs incurred in rebuilding a new and somewhat dissimilar structure at an altogether different location.

The Schaefers' .559-acre tract had been the location of their farm implement business for approximately fifteen years. Several buildings were located on the property and were used in the operation of the business. After the condemnation only one building was left on the remainder. Charles Schaefer testified that the property remaining after the condemnation was not suitable for the operation of the business in that it was not large enough. He further testified, over objection, that the business was relocated on the other side of the highway and a short distance west from the subject property.

The Schaefers conceded at the outset of the trial "that the sole and only question to be determined at this trial is the market value of the land taken plus damages, if any, to the residue of the property." Charles Schaefer testified that the entire

---

1. Three special issues were submitted to the jury which inquired as to (1) the reasonable market value of the land taken, to which the jury answered $25,000, (2) the reasonable market value of the remainder immediately before the taking, to which the jury answered $6,500, and (3) the reasonable market value immediately after the taking, to which the jury answered $2,000.

property was worth $57,000. His testimony reflects that this figure was computed by combining $30,000 "replacement cost" for the main building, $12,000 "replacement cost" for the other buildings, $8,000 "replacement cost" for paving and ramps, and $7,000 for the entire tract of land. He also testified that the land with the buildings taken by the condemnors had a value of $49,000 and that the remainder suffered $6,000 in damages. Richard L. Schaefer simply affirmed his brother's opinion of the property's market value.

The condemnors called two witnesses at the trial, both of whom qualified as expert appraisers. One of the witnesses testified that the value of the land and improvements was $12,195 and the damage to the remainder was $5,165, for a total loss of $17,360. The other witness estimated the value of the land and improvements at $12,045 and the damage to the remainder at $3,030, for a total loss of $15,075. Using the income approach, one of the witnesses further testified that the value of the property was $15,325, based on an annual gross rental income of $4,147 and a net rental income of $2,670.

Prior to trial, the condemnors made a motion *in limine* to prevent the landowners from giving testimony relative to expenses incurred in moving their business, the cost of acquiring a new site for the business, and the cost of constructing improvements on the new site. The trial court sustained the motion as to the moving expenses and the cost of acquiring a new site for the business. However, the court overruled that part of the motion dealing with the cost of constructing improvements at the new business site.

The thrust of the landowner's presentation at trial was to establish that the Schaefers were entitled to compensation equal to the building costs incurred at the new site. Repeated questions by landowners' counsel referred to the cost of building the new improvements at the new location. The new building, incidentally, appears to be somewhat different from the existing structures, some of which were fifteen years of age. Charles Schaefer testified that the new building was approximately equal in size to all of the structures at the old site and that the new building contained approximately three thousand square feet in the main building and approximately twenty-four hundred square feet in what was referred to as the shed area. Landowners' counsel then inquired about the actual cost of construction at the new site.

> "Q. Tell this jury how much it actually cost to construct, not some theoretical figure, but what it actually cost to re-build or to build the building you built in '72 and '73?"

After condemnors' objection was overruled, the question was asked again in the following form:

> "Q. Tell this jury whether or not it cost more than $10.00 a foot for the main building and $5.00 a foot for the shed?"

To such question, again after objection, Charles Schaefer responded, "Yes. It cost more." Counsel for the landowners then asked how much the new structure cost. It was only in the face of strenuous objection that this question was withdrawn. In any event, the jury already heard sufficient testimony from the landowner to conclude that the new structure cost more than $30,000 for the main building (3,000 square feet × $10 per square foot) and $12,000 for the shed area (2,400 square feet × $5 per square foot). It is to be noted that the $30,000 and $12,000 cost figures are the identical figures claimed by the landowner as the replacement costs of the old buildings located on the condemned property. It is apparent that the actual costs of construction in the new location were the basis, and the only basis, for the landowner's so-called replacement cost figures; they find no other support in the record before the court.

In the closing argument, counsel for the landowners again referred to the actual

costs expended in construction at the new location. Alluding to the landowner's testimony that the new construction cost more than $10 a foot for the main building and $5 a foot for the shed area, landowners' counsel argued that it was only fair and just that the landowners be made whole. The landowners' counsel further argued, "Neither one of these men [the condemnors' witnesses] who theoretically were supposed to be seeking justice, ever went out and talked to these people right over here and asked them 'how much did it actually cost to do it?' . . . Did any of them have the slightest concern to go over and ask these people exactly what it cost to re-build these buildings in substantially the same way?" The condemnors' counsel promptly objected to this line of argument, but the objection was overruled.

Though the landowners conceded at the outset of the trial "that the sole and only question to be determined at this trial is the market value of the land taken plus damages, if any, to the residue of the property," it does not appear that the landowners sought to establish the value of the land in terms of what it would bring in a transaction between a willing seller and a willing buyer, *City of Austin v. Cannizzo,* 153 Tex. 324, 267 S.W.2d 808 (1954). The landowners' only attempt to prove market value was their testimony concerning the costs incurred in rebuilding at the new site. It is apparent that the landowners equated the market value of their old buildings with the cost of constructing the new building.

*State v. Walker,* 441 S.W.2d 168 (Tex. 1969), was a similar condemnation action in which a part of a tract was taken for the enlargement of an existing highway. The larger portion of the improvements, which were commercial in nature, were situated on the property taken but two warehouses were located on the remainder. The land-

owner testified that he planned to tear down the buildings on the part taken and rebuild new and similar improvements (a filling station) on the remaining portion of his property. It was the landowner's contention that to best utilize the remainder it would first be necessary to demolish and remove the two warehouses which were situated thereon. Over objection, the landowner testified to the cost of demolishing and removing these warehouses. It was the landowner's theory that the cost of removal of these warehouses bore on the market value of the remainder and on what was necessary to put the remaining property to its highest and best use. This court, in reversing, held such testimony to be harmful error. Though the testimony in *Walker,* which was held to be harmful error, was confined to the landowner's estimate of cost of demolition on his *own* remaining tract, the landowner in the instant case would go considerably beyond. Here the landowner would show new construction costs on an entirely different tract wholly separated from the remainder.

In *City of Austin v. Cannizzo, supra,* this court stated, "In the willing seller-willing buyer test of market value[2] it is frequently said that all factors should be considered which would reasonably be given weight in negotiations between a seller and a buyer. . . ." And depending on the particular circumstances, removal, reconstruction or replacement costs of improvements located on the property taken or the property remaining may or may not be a proper subject of inquiry. *State v. Carpenter,* 126 Tex. 604, 89 S.W.2d 194, *motion for rehearing overruled,* 126 Tex. 604, 89 S.W.2d 979 (1936); *City of Dallas v. Priolo,* 150 Tex. 423, 242 S.W.2d 176 (1951); *State v. Zaruba,* 418 S.W.2d 499 (Tex.1967). There is nothing in the foregoing cases however which authorizes the evidence

**2.** Market value in the instant case was defined in the court's charge in the following terms:

" 'Reasonable market value,' as that term is used in this charge, means the price the property will bring in cash when offered for sale by one who desires to sell, but is not obliged to sell, and is bought by one who desires to buy, but is under no necessity of buying."

complained of here. The entire focus in determining market value is directed on the property taken and the property remaining. The construction cost of a building other than the one condemned bears doubtful relevance to the market value of the condemned structure, particularly if the structures are dissimilar in size, materials or construction. This is especially true when the new structure is on property wholly removed from the property in issue. When it is also considered that the condemned structures in the instant case were standing for several years, the relevance of evidence pertaining to the cost of the new structure cannot be supported. In *Gauley & E. R. Co. v. Conley*, 84 W.Va. 489, 100 S.E. 290, Annot., 7 A.L.R. 157 (1919), the West Virginia Supreme Court of Appeals addressed a similar question. A railway company condemned a lot on which was located a horse and mule barn, and the owner then rebuilt his barn on another lot. The owner attempted to prove the market value of his old barn by evidence of the actual cost of constructing the new barn. The court held:

> "Evidence of the cost of construction of a new barn on another site was improperly admitted also. The applicant pays the value of the old barn, and, out of that compensation or otherwise, the defendant should provide himself with a new one, if he needs or desires it. . . . The condemnor is not required, in addition to such payment, to provide new buildings." 100 S.E. 290 at 292–93.

The landowners contend that at least some of the testimony concerning the cost of constructing the new building was admitted without objection. The court of civil appeals agreed and held that by failing to make objections the condemnors waived their objection to the evidence. Our examination of the record reveals, to the contrary, that the condemnors' counsel objected each time reference was made to the actual costs incurred by the landowners in construction of the new building at the new location. In any event, it is beyond dispute that the condemnors' counsel made numerous, repeated, and strenuous objections to references by the landowners and their counsel to the cost of new construction at the new location. It was only over such objections, repeatedly made, that the testimony was admitted before the jury.

The landowners further contend that the questioned testimony, if error at all, was harmless error. The court of civil appeals has apparently so held. We do not agree. Condemnors sought its exclusion by motion *in limine*; consistently made proper and timely objection each time it was offered; and further made proper and timely objection during argument to the jury. In *State v. Walker, supra,* this court held the erroneously admitted testimony to be harmful error by stating, "The testimony was harmful in that it placed before the jury a theory that the condemnor was liable for all costs necessary to put the remaining land to its highest and best use as a filling station." In the instant case the testimony was harmful not only because it put before the jury an erroneous theory, but also because it put before the jury the only possible basis for the award that was made.

We reverse the judgments of the trial court and the court of civil appeals and remand the cause for a new trial.